In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-24-00179-CV
_____

## ROMAN FOREST SEC III, LLC, Appellant

## V.

## ROMAN FOREST PUBLIC UTILITY DISTRICT NO. 4, Appellee

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 23-09-13765-CV**

## MEMORANDUM OPINION

After suing for among other things, specific performance and breach of

contract, Roman Forest Sec III, LLC ("Appellant" or "Developer") appeals the trial

court's Order granting Roman Forest Public Utility District No. 4's ("Appellee" or

"District") Second Plea to the Jurisdiction.[1] *See* Tex. Civ. Prac. & Rem. Code Ann.

---

[1] The Developer also sued two of the District's board members, Robert Burgess and Rodrigo Garcia, for breach of warranty of authority and ultra vires acts. Those claims against the board members were not dismissed and are still pending in the trial court.

1

§ 51.014(a)(8). In this interlocutory appeal, the Developer raises five issues, four of those framed in the alternative. In issue one, the Developer asks whether the trial court's order granting the District's plea to the jurisdiction should be reversed because the contract at issue is for both the sale of land and services, meets the requirements of Texas Local Government Code sections 271.151–.153, thus waiving the District's immunity since the Developer agreed to provide services the District would otherwise provide and the District agreed to reimburse the Developer. In the alternative, in four other issues, the Developer asks whether: the trial court's order granting the District's plea to the jurisdiction should be reversed because the Developer performed under the contracts between the parties, making them enforceable; the Developer has demonstrated a fact issue with regard to immunity, and therefore the trial court's order should be reversed; the District has immunity to the Developer's constitutional and equitable claims; and the trial court abused its discretion in denying the District's motion for continuance to complete jurisdictional discovery. In answer to issue one, we hold that the parties' "Commercial Contract – Unimproved Property" (the "Original Agreement") was a written contract satisfying Texas Local Government Code section 271.151(2)(A) that contains the essential terms for the provision of services. Since that issue is dispositive to this appeal, we need not address the Developer's remaining issues framed in the alternative. *See* Tex. R. App. P. 47.1. We reverse and remand the breach of contract claim and related

2

claim for specific performance for the reasons discussed below but affirm the trial court's Order as to the Developer's other claims.

## BACKGROUND[2]

The District is a public utility district created pursuant to article XVI, section 59 of the Texas Constitution and Chapter 54 of the Texas Water Code and generally enjoys governmental immunity. *See Luce Bayou Pub. Util. Dist. v. Kilpatrick*, 653 S.W.3d 323, 326 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *see also* Tex. Const. art. XVI, § 59; Tex. Water Code Ann. § 54.001–.813, et seq. Providing water and sewer services and assessing taxes are inherently governmental functions. *See Kilpatrick*, 653 S.W.3d at 326; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215 (a)(9), (11), (26), (32); *Bennett v. Brown Cnty. Water Improvement Dist. No. 1*, 272 S.W.2d 498, 501–02 (1954). Since the District was performing governmental functions when it allegedly entered into the agreement at issue, it enjoys immunity, unless that immunity has been waived. *See Kilpatrick*, 653 S.W.3d at 326; *see also Bennett*, 272 S.W.2d at 501–02.

### Parties' Relationship and Pleadings

In November 2020, Shadow Creek, LLC, and the District signed the Original Agreement. Shadow Creek, LLC's interests and obligations were ultimately

---

[2] We have gleaned some of the background outlined below from the parties' pleadings.

assigned to the Developer. The Developer attached the Original Agreement, subsequent amendments, and the written assignment, among other supporting documents, to each of its pleadings. The parties agreed that the Developer would purchase 282 lots the District owned for $1,203,970. The Original Agreement provided that earnest money be deposited by the Developer in an escrow account and that the Developer could assign its interest. Additionally, Paragraph 12 of the Original Agreement contained "Special Provisions" indicating the parties had attached an addendum as Exhibits A and B. Exhibit A to the Special Provisions provided a list of the lots by property identification number, along with an assessed value. Exhibit B of the Special Provisions to the Original Agreement, contained the following language:

> > Any and all Plats will be furnished by Seller. Plats will be in legible form whereby Buyer will be able to determine actual property dimensions.
> > All Sales proceeds will be applied by PUD Number Four to the improvements of the subject properties being purchased.
> > All development costs typically considered and/or eligible for reimbursement to the Developer will be reimbursed to Developer via most efficient and applicable entity, [i.e.] MUD, PUD, etc. These costs include, but are not limited to Water, Sewer, Drainage, Engineering, Parks, and Roads.
> > Buyer has the right to rescind this Offer IF Buyer is not successful in purchasing all of the lots/properties being publicly auctioned on December 1, 2020, at 501 N. Thompson, 4th Floor, (Suite 402), Conroe, TX, and under the heading of "ROMAN FOREST PUBLIC UTILITY DISTRICT TAX RESALES."

Robert Burgess as the District's representative and J. Alan Kent as Shadow Creek LLC's representative initialed Exhibit B.

The parties amended the Original Agreement four times: on March 18, 2021; on June 30, 2021; effective on April 13, 2021; and on October 12, 2022. The First Amendment dated March 18, 2021, corrected the Buyer's name to Shadow Creek Estates, Ltd. and extended the feasibility period to July 1, 2021. The Second Amendment extended the feasibility period again to July 3, 2023. The Third Amendment allowed the Developer to close early on eighty of the lots and changed the title company. The Fourth Amendment changed the title company again. Each of the amendments indicated that the parties agreed that except for the amendments, the Original Agreement was "in full force and effect" and they "ratify" and "affirm" it.

Subsequently, before the end of the extended feasibility period, on December 15, 2021, the Parties executed a Preconstruction Agreement. Per the Preconstruction Agreement, the Developer would "proceed with construction of water, sewer, and drainage and detention facilities to serve an approximate 415 acre tract within or to be within the District." The District "would acquire the Facilities constructed" and would pay for them through taxes and selling bonds. The Preconstruction Agreement addressed, among other things, how contracts were to be awarded by the Developer with Board approval, reporting requirements the Developer had to the Board, that

5

the District would acquire the facilities constructed by the Developer at the "Developer's Reimbursable Cost," that the District would lease the facilities if it could not yet purchase them, and provided additional details. Rodrigo Garcia signed the Preconstruction Agreement on behalf of the District, and Kent signed it on behalf of Shadow Creek Estates, Ltd.

The Developer filed its Original Petition in September 2023 and asserted claims against the District for specific performance and breach of contract and sought attorney's fees. With its Original Petition, the Developer attached the Original Agreement and amendments plus an assignment. The following month, the District filed its Plea to the Jurisdiction and Subject Thereto, its Original Answer. In November 2023, the Developer filed its First Amended Petition adding two District board members, Burgess and Garcia, who signed the Original Agreement and amendments. In November 2023, the District filed its First Amended Plea to the Jurisdiction and set it for hearing. The Developer filed its Response to the District's First Amended Plea to the Jurisdiction, and the District filed a Reply to that Response. After holding a hearing on the District's First Amended Plea to the Jurisdiction on January 5, 2024, the trial court signed an Order on January 16, 2024, granting the plea, ruling that all claims as currently pleaded are barred, and requiring the Developer to replead by January 31, 2024. The parties subsequently entered a Rule

11 Agreement that allowed for continued negotiations and extended the deadline for the Developer to replead until February 28, 2024.

On February 28, 2024, the Developer repleaded by filing its Second Amended Petition, from which we derive much of the factual background. According to the Developer's live pleading, about fifty years ago, the property at issue was laid out and partially developed as a residential subdivision. The development was never completed, and the subdivision deteriorated. Unable to revive the development on its own, the District invited the Developer to complete the development of the subdivision, including buying certain lots and providing services for public improvements. The services for public improvements, including water, sewer, drainage, engineering, parks, and roads, would benefit all the property the District serviced.

The Developer also alleges in its Second Amended Petition that the District acquired one hundred lots within the subdivision through foreclosure and planned to sell them in October 2020 at public auction. The District's attorney, Ron Young, contacted the Developer through one of its managing members, Kent. Young alerted Kent to the intended foreclosure sale. Young also notified Kent that the District owned an additional 280+ lots it intended to sell. Young and Kent agreed that if the Developer purchased the 100 lots at auction, then Young would advise the District to sell to the Developer the additional 280+ lots via private sale.

7

With its Second Amended Petition, which is its live pleading, the Developer attaches as exhibits: the Original Agreement and all four amendments; the assignment; and the Preconstruction Agreement. The Developer pleads that "the Preconstruction Agreement provided additional details and must be read and construed as part of the Contract at issue in this case[.]" It also asserts that "in Exhibit B, Plaintiff agrees to serve as Developer and the District agrees to apply the sales proceeds from the Contract to reimburse Plaintiff for the utilities and infrastructure development services it is to provide."

In its Second Amended Petition, the Developer claims that the trial court has jurisdiction,[3] and the District is not immune from suit, because under Texas Local Government Code sections 271.151–.52, the Legislature waived immunity from suit for certain contracts providing goods and services to the District. It pleads that the "[c]ontract at issue is written," contains the essential terms, and the Developer was supposed to provide and did provide the District with goods or services, which served the District and its future residents. In reference to the Original Agreement, the Developer asserts that it relied on the contract, "and the District's continued cooperation" with it "in connection with its pursuit of the Property[,]" and expended "more than $3 million, including, but not limited, to entering into various contingent

---

[3]The Second Amended Petition also addresses the trial court's jurisdiction over the two board members alleged ultra vires acts, but as those claims were not dismissed nor part of this appeal, we do not discuss them in this opinion.

agreements to provide utilities to the Property and other costs of development."

Additionally, the Developer asserts that in reliance on the Original Agreement it,

> expended funds to negotiate and develop plans for sewage and water plants that would provide 100 percent of the District's utility needs—for the Property as well as the balance of the District's jurisdiction. Specifically, Plaintiff entered into negotiations with the neighboring consolidated municipal utility district to secure a some—but not all—of the water and sewer taps needed to serve the Property. At no time has the District had the capacity to fund or construct the utilities needed to service the Property. At all times relevant the District relied upon Plaintiff to advance all costs necessary to provide utilities to the Property. Plaintiff relied upon Exhibit B to the Contract—understanding that the intent of the parties was for Plaintiff to serve as Developer of the Property and that the District would reimburse Plaintiff for Plaintiff's construction of the basic utilities needed to serve the entire District, along with the Property.

According to the Developer, on September 1, 2023, when it sought to close early on eighty lots and sent written notice to the District, the District's attorney responded through email that "the seller is not closing on the subject lots. The district[']s position is the contracts are invalid. . . ." The Developer also alleges that after this, on September 8, 2023, it sent written notice to the District that its conduct constituted anticipatory repudiation of the contract and demanded the District provide written assurance it would honor its obligations, or the Developer would "treat the District's September 1, 2023 email as material breach of the contract." The District's attorney responded through its attorney on September 12, 2023, and again denied the contract's enforceability but did not identify any legal or factual reasons for that position.

9

The Developer alleges that the District's conduct constitutes repudiation of the contract and is a material breach. It asserts that the District refused to honor its contractual obligation to close on the sale of the Property to the Developer and failed to perform its other contractual obligations. Thus, the Developer alleges the District is in default under Section 15 of the Original Agreement.

The Developer's claims against the District include breach of contract, a related claim for specific performance, and a constitutional claim for violation of due process, among others.[4] The Developer sought specific performance by asking that the District execute and deliver a deed for the Property and perform its other contractual obligations. It also claims the District's breach resulted in direct damages, including out-of-pocket damages, among others, and seeks attorney's fees.

**Second Amended Plea to the Jurisdiction, Response, and Trial Court's Order**

The District addressed the claims in the Developer's live pleading by filing its Second Plea to the Jurisdiction and Motion to Dismiss. In its second plea, the District contends that the subsequent Preconstruction Agreement is not referenced anywhere in the Original Agreement, nor does the Preconstruction Agreement mention the Original Agreement. The District argues that these were separate and independent agreements signed a year apart with neither referencing the other. It contends that

---

[4]The other claims pertain to the two board members. Those claims were not dismissed and are not part of this appeal, so we do not address them.

the Original Agreement was merely an "earnest money contract" that gave the Developer the option to purchase the property. The District notes that the Preconstruction Agreement was signed more than a year after the Original Agreement, and the Preconstruction Agreement does not require that any earnest money funds from the Original Agreement be used for development. The District states that instead, under the Preconstruction Agreement, bonds will be used to fund the development and pay the Developer. It asserts that the Original Agreement does not obligate the Developer to do anything and only gave it the option to purchase 280 lots. The District contends that despite being allowed to replead, the Developer's Second Amended Petition did not bring any significantly different claims, and the new ones do not invoke a valid waiver of immunity. The District then prays that the Developer's claims be dismissed.

The District supported its Second Amended Plea with the same evidence as its earlier Plea, except that it also attached a memorandum opinion from a federal district court. The same day it filed its Second Plea to the Jurisdiction, the District filed a Notice of Hearing setting it to be heard on April 19, 2024.

Three days before the scheduled hearing, the Developer filed its Motion for Continuance of Hearing and Subject Thereto, Response to the District's Second Plea

to the Jurisdiction, which it supported with evidence.[5] In connection with the Motion for Continuance, the Developer asserted that on November 9, 2023, it sent a Public Information Act request to the District. According to the Developer, before producing any documents, the District asked the Attorney General's Office to issue an opinion about whether it had to produce the records and whether the litigation exception applied. On February 8, 2024, the AG's office issued an opinion letter stating that the District must turn over all the requested records and the litigation exception did not apply. When the District still had not responded to the Public Information request on March 27, 2024, the Developer sent written discovery requests to the District, and those responses were due on April 26, 2024. The Developer claimed that over two months after the AG ordered the District to produce the documents, it finally did so, but it was a week before the scheduled hearing on the District's Second Plea. According to the Developer, those records were related to issues in the Second Plea and whether the parties intended for the Developer to provide services, but the Developer did not have time to review all the records before the scheduled hearing. The Developer then listed all the documents requested and provided and asserted that some documents are still missing. It also asked the trial

---

[5]The District filed Exhibits 4 through 6 under separate cover two days later, which was one day before the scheduled hearing.

court to continue the hearing for forty-five days so it could review the documents and allow time for the District to respond to its written discovery requests.

In Response to the District's Second Plea to the Jurisdiction, the Developer makes many of the same arguments previously asserted, including that immunity was waived under section 271.152, since the Original Agreement provided essential terms for goods and services. It contends that the court must look beyond the title of the contract and that the agreement for services does not have to be the primary purpose of the contract—in other words, just because it is a real estate contract does not mean services are not involved. The Developer also cites the same case authority it did in response to the District's earlier Plea and points to the language in the Original Contract's "Special Provisions."

The Developer contends the evidence and records it attached show that it provided services to the District, including discussions beginning in 2019, how it was named as the District's Developer, and noting that the contract was signed two days after it was named the Developer. The Developer asserts that it provided the services consistent with the agreement, including construction of water and sewage plant facilities not available to the lots constituting the Property under the contract. It also argues, "Plaintiff's ability to make available—i.e. to have construction plans or to enter into subsequent contracts to provide utility access to the District's jurisdiction—were the basis for one of the Contract amendments." It outlines what

13

the Developer's representatives did as shown in the documents produced, including attending District meetings, conferring with District's counsel, discussing prefunding agreements – which meant reimbursement to Developer later. Among other things, the Developer contends that in furtherance of its obligations under the Original Agreement, the parties "entered into a Preconstruction Agreement dated December 15, 2021." The Developer cites language in the Preconstruction Agreement and argues "it memorialized its obligation to construct 'water, sewer, and drainage and detention facilities' . . . to serve an approximate 415-acre tract within or to be within the District." The Developer describes costs and expenses it paid in development and cites more evidence attached. It addressed things like reimbursement discussions, advances to the District, preparing roads, dealing with plans for a wastewater plant to be constructed by another entity and related condemnation proceedings. According to the Developer, the District's board minutes reflect that in August 2023, the board discussed the status of development. Despite the District's receiving thousands of dollars from the Developer, the minutes reflect that "the [b]oard informed Alan Kent's agent, Jim Girsham, that the earnest money contract for the purchase of the subject lots was invalid and would not close until a new contract was approved by the board." Developer argues, "Because the Contract and the circumstances at the time the Contract was formed support the conclusion that parties intended the Contract to include both the purchase/sale of real

14

estate and also included the essential terms of an agreement for services, the District's plea should be denied." It also contends that its request for damages falls within the scope of section 271.153.

In support of its Motion for Continuance and Response to the District's Second Plea to the Jurisdiction, the Developer included the following exhibits: a November 9, 2023 letter from to the District requesting various documents and records, including minutes, agendas, invoices for legal fees, contracts, and correspondence between the District's directors; letter from the District dated November 17, 2023, to the AG's office claiming requested materials fall under litigation exception and requesting an opinion; Developer's written discovery requests to the District sent on March 27, 2024, and including a copy of the Original Agreement, amendments, and Preconstruction Agreement; records from the District, including correspondence, attorney's invoices, minutes, and notices; Plaintiff's Second Amended Petition with attached exhibits; and Developer's Business Records with custodian's affidavit showing payments and advances made by the Developer.

On April 18, 2024, the District filed its Reply to Plaintiff's Response to Defendant's Second Plea to the Jurisdiction and Motion to Dismiss for Lack of Jurisdiction. Among other things, in its Reply, the District asserts that the Original Agreement did not obligate the Developer to do anything, much less provide goods and services. It contends that the Developer did not have to purchase the lots and

15

could have just walked away. The District also distinguishes the case law cited by the Developer. The District argues that the Developer's waiver and estoppel claims are based on the subsequent Preconstruction Agreement, which the Developer is not suing over. The District claims that the Preconstruction Agreement is the actual contract in which Developer agreed to construct water, sewer, and drainage detention facilities and called for the District to issue bonds to reimburse Developer pursuant to the Preconstruction Agreement's terms. The District agrees that the Preconstruction Agreement constitutes a contract for the provision of goods and services under Texas Local Government Code chapter 271. That said, the District asserts the lawsuit is not about violating the Preconstruction Agreement, which was signed thirteen months after the Original Agreement, and neither agreement mentioned the other. The District notes that all the money spent by the Developer began in 2022, after the Preconstruction Agreement.

Additionally, in its Reply, the District argues the waiver and estoppel arguments are inapplicable, as equitable estoppel applies only to municipalities. It states that the Developer's constitutional argument for a waiver of immunity is unsupported. Finally, the District urges the trial court to deny the Developer's Motion for Continuance. The District attached two exhibits to its Reply, the Original Agreement and the Preconstruction Agreement executed in December 2021.

After the hearing, the trial court signed an Order Granting Defendant's Second Plea to the Jurisdiction and Motion to Dismiss for Lack of Jurisdiction. The trial court dismissed all the Developer's claims against the District with prejudice and determined they were barred by governmental immunity. This appeal followed.

## ISSUE ONE: WRITTEN AGREEMENT

In its first issue, the Developer contends the trial court's order granting the District's plea to the jurisdiction should be reversed "because the contract at issue is for both the sale of land and services, [it] meets the requirements of Tex. Loc. Gov't Code § 271.151, et. seq." The Developer contends that immunity is waived, because under the contract it agreed to provide services the District would otherwise provide, and the District agreed to reimburse the Developer.

### <u>Standard of Review</u>

We review a trial court's ruling on a plea to the jurisdiction based on governmental immunity de novo. *See Campbellton Rd. v. City of San Antonio*, 688 S.W.3d 105, 113 (Tex. 2024); *Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 97 (Tex. 2023). When a plea to the jurisdiction challenges the pleadings, we must determine whether the pleader "has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (citation omitted). When ascertaining whether the plaintiff met that burden, "we liberally construe the pleadings, taking all factual

assertions as true and looking to [the plaintiff's] intent." *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015); *see Miranda*, 133 S.W.3d at 226.

In contrast, when a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. Under that standard, we credit evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *See id.* A defendant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id.* If the defendant meets this burden, the plaintiff must present sufficient evidence to raise a fact question about jurisdiction, or we will sustain the plea. *See id.*; *see also Lubbock Cnty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 305 (Tex. 2014).

"A dilatory plea's purpose 'is to defeat a cause of action without regard to whether the claims asserted have merit,' 'not to force the plaintiffs to preview their case on the merits.'" *Campbellton Rd.*, 688 S.W.3d at 123 (quoting *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 453 (Tex. 2016)). When an authorized local governmental entity "enters into a contract subject to this subchapter," immunity from suit is waived "for the purpose of adjudicating a claim

18

for breach of the contract[.]" Tex. Local Gov't Code Ann. § 271.152. "When an authorized local governmental entity enters into a contract subject to [the statute], immunity from suit is waived 'for the purpose of adjudicating a claim for breach of the contract,' but '[t]he waiver does not depend on the outcome.'" *Campbellton Rd.*, 688 S.W.3d at 123 (quoting Tex. Loc. Gov't Code Ann. § 271.152; *Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cnty.*, 449 S.W.3d 98, 110 (Tex. 2014)). Where "the Developer has 'plead[ed] facts with some evidentiary support that constitute a claim for which immunity is waived[,]'" it has shown that it is entitled, at least for now, to its day in court against the District. *Id.* (citing *Zachry Constr. Corp.*, 449 S.W.3d at 110; *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010)).

### Applicable Law

"The Legislature enacted section 271.152 'to loosen the immunity bar so that *all* local governmental entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts.'" *Kirby Lake*, 320 S.W.3d at 838 (quoting *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self–Ins. Fund,* 212 S.W.3d 320, 327 (Tex. 2006)). "The statute waives immunity from suit for certain contract claims[.]" *Id.* "A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this

19

subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract. . . ." Tex. Loc. Gov't Code Ann. § 271.152. A "[c]ontract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity." *Id.* §§ 271.151(2)(A), 271.152; *see also Kirby Lake*, 320 S.W.3d at 838.

Courts have taken a broad view of what "services" means, "holding that it 'includes generally any act performed for the benefit of another.'" *Campbellton Rd.*, 688 S.W.3d at 122 (quoting *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 629 (Tex. 2020)). Services "must provide more than a mere 'indirect, attenuated benefit.'" *Id.* (quoting *Kirby Lake*, 320 S.W.3d at 839). In one instance, a sister court concluded that a company constructing parking facilities as consideration for the grant of an easement—an interest in real property—constituted a service for the governmental entity. *See Hous. Cmty. Coll. Sys. v. HV BTW, L.P.*, 589 S.W.3d 204, 212 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Agreements for developers to provide water and sewer facilities complying with a water authority's specifications were for providing services to the authority. *See Kirby Lake*, 320 S.W.3d at 832, 838–40; *see also Campbellton Rd.*, 688 S.W.3d at 122. Likewise, agreements for a developer to hire others to construct infrastructure like roads and bridges are also sufficient to constitute the provision of services to the governmental authority. *See Campbellton Rd.*, 688 S.W.3d at 122 (quoting *Kirby*

20

*Lake*, 320 S.W.3d at 832–33). An agreement to provide services "need not be the 'primary purpose,' provided the benefits to the governmental entity are 'sufficiently direct and concrete.'" *Id.* at 123 (quoting *Kirby Lake*, 320 S.W.3d at 839; *Byrdson Servs., LLC v. Se. Tex. Reg'l Plan. Comm'n*, 516 S.W.3d 483, 487 (Tex. 2016)) (other citation omitted).

"Chapter 271 does not define 'essential terms.'" *Hous. Cmty. Coll.*, 589 S.W.3d at 212 (quoting *City of Houston v. Williams*, 353 S.W.3d 128, 138 (Tex. 2011)). Yet courts have characterized essential terms under chapter 271 to include, among other things, the parties' names, the price to be paid, the service to be rendered, the property at issue, and the time of performance. *See Williams*, 353 S.W.3d at 138–39; *Kirby Lake*, 320 S.W.3d at 838; *see also Hous. Cmty. Coll.*, 589 S.W.3d at 212. The essential terms must outline the parties' basic obligations. *See Kirby Lake*, 320 S.W.3d at 838. That said, an agreement with general terms of the parties' obligations is enough where parties have rendered some performance or acted in reliance upon their expressions of the agreement. *See Hous. Cmty. Coll.*, 589 S.W.3d at 213 (quoting Fischer *v. CTMI, L.L.C.*, 479 S.W.3d 231, 242 (Tex. 2016)) (other citation omitted). The parties' performance can support an inference that they had a meeting of the minds as to their respective obligations and raise a fact issue whether they intended to have a binding agreement. *See id.*

21

Additionally, the Supreme Court of Texas has explained that it

> *Lubbock County* and its progeny instruct that the absence of an express money-payment provision, standing alone, must not be given too much weight in determining whether contracting parties agreed to service terms, so long as the service terms are "sufficiently definite to 'enable a court to understand the parties' obligations,' and to give 'an appropriate remedy' if they are breached."

*Campbellton Rd.*, 688 S.W.3d at 120–21; *see also San Jacinto River Auth. v. City of Conroe*, 688 S.W.3d 124, 134 (Tex. 2024) (explaining that courts routinely uphold requirements contracts absent set quantity terms when there is no set term and parties' conduct requires the quantity and concluding the agreement at issue plus a supplemental agreement together were sufficiently definite). "The language of section 271.152 reveals that whether there is a "contract"—including essential terms—is a question asked at the time of formation." *San Jacinto River Auth.*, 688 S.W.3d at 136 (citing *Campbellton Rd.*, 688 S.W.3d at 114–16). Clearing a jurisdictional hurdle does not require the plaintiff to prove a contract's ultimate enforceability. *Campbellton Rd.*, 688 S.W.3d at 117. It is enough that a plaintiff raised a fact issue on the written contract's formation. *See id.*

## Analysis

Although the District initially challenged the Developer's pleadings, both parties submitted evidence. Thus, the District's plea to the jurisdiction challenged both the pleadings and the evidence. In challenging the trial court's jurisdiction, the District primarily contends there was no waiver of immunity, because the contract

22

at issue was only for the purchase of real estate and not for "goods and services." The District asserts that there is an absence of "essential terms" that required the Developer to do anything.

The Developer's pleadings show that it was seeking specific performance, along with damages in conjunction with the District's alleged breach of the Original Agreement. The Developer outlined facts in its live pleading, including that the parties entered into the Original Agreement, which it attached as an exhibit to its live pleading along with the parties' four subsequent amendments. The Developer pleaded that Exhibit B to the contract includes the following language in the Special Provisions, which it relied on:

> All Sales proceeds will be applied by PUD Number Four to the improvements of the subject properties being purchased.
> All development costs typically considered and/or eligible for reimbursement to the Developer will be reimbursed to Developer via most efficient and applicable entity, i.e. MUD, PUD, etc. These costs include, but are not limited to Water, Sewer, Drainage, Engineering, Parks, and Roads.

The Developer contends this language from the attached Original Agreement shows the parties had a written agreement for the provision of goods and services: the Developer would purchase the specified real estate from the District; the Developer would provide development services for the District; and the District would take the funds it received from the sale of the property to reimburse the Developer for the improvements and reimbursable costs, including water, sewage, drainage,

23

engineering, parks and roads. The Developer points to its performance in reliance on this agreement, along with the parties' Preconstruction Agreement that elaborated on the parties' obligations, as evidence that the Original Agreement was for the provision of services to the District.

We begin with the District's challenge to the Developer's pleadings. The Developer pleads that the parties had a written agreement stating the essential terms for the provision of services that complied with Texas Local Government Code section 271.151, and the District breached that agreement. Thus, the Developer alleges the District's immunity is waived under section 271.152. The Developer also asserts, "In connection with and to further performance of the Contract by Plaintiff, Plaintiff and the District entered into a Preconstruction Agreement dated December 15, 2021[,]" which provided additional details that must be read and construed with the Original Agreement. The Developer seeks specific performance and monetary damages, including direct damages and out-of-pocket damages, among others.[6] Liberally construing the Developer's pleadings, taking all factual assertions as true and looking to its intent, we conclude that the Developer has alleged facts in its live petition affirmatively demonstrating the trial court's jurisdiction to hear the case. *See City of Ingleside*, 469 S.W.3d at 590; *Miranda*, 133 S.W.3d at 227.

---

[6]Although the Developer requests some damages that are not allowable, it did request some measure of damages expressly allowed by the statute. *See* Tex. Local Gov't Code Ann. § 271.153(c).

24

We next turn to the District's challenge to the jurisdictional facts, in which we consider relevant evidence submitted by the parties. *See Miranda*, 133 S.W.3d at 227. If the Developer pleads facts with some evidentiary support that constitute a claim for which immunity is waived, it has shown it is entitled to its day in court, regardless of the outcome. *See Campbellton Rd.*, 688 S.W.3d at 123 (citing *Zachry Constr. Corp.*, 449 S.W.3d at 110; *Kirby Lake*, 320 S.W.3d at 839).

As noted above, the Developer pleads that it had an agreement with the District containing essential terms for the provision of services, and the District breached that agreement by failing to close on the property. In contrast, the District asserts the agreement at issue is limited to the sale of real estate but does not involve the provision of goods or services or obligate the Developer to do anything. Although the Original Agreement entailed the sale of real estate, it was also for the provision of services, as we discuss below. *See Campbellton Rd.*, 688 S.W.3d at 123 (explaining the provision of services need not be the contract's primary purpose); *Byrdson Servs., LLC*, 516 S.W.3d at 487; *Kirby Lake*, 320 S.W.3d at 839.

We have outlined the parties' relevant evidence to the jurisdictional facts in our discussion of the background above. Most significant in our analysis is the parties' Original Agreement. A review of the Original Agreement, including the Special Provisions attached as Exhibit B reveals that the District had to apply the sales proceeds "to the improvements of the subject properties being purchased." If

the Developer were not meant to make improvements, a requirement that the District had to apply the funds from the sales to those improvements would be meaningless. *See Rosetta Res. Operating, L.P. v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022) (stating contract construction principles requiring courts to give language its plain, ordinary meaning and avoid a construction that renders a provision meaningless). Additionally, the Special Provisions state, "All development costs typically considered and/or eligible for reimbursement to the Developer will be reimbursed to Developer via most efficient and applicable entity, i.e. MUD, PUD, etc. These costs include, but are not limited to Water, Sewer, Drainage, Engineering, Parks, and Roads." By its plain language, the agreement shows that the District would reimburse eligible development costs to the Developer for things such as water, sewer, drainage, engineering, parks, and roads, which courts have said previously fall under the broad definition of services. *See Campbellton Rd.*, 688 S.W.3d at 122; *San Antonio River Auth.*, 601 S.W.3d at 629. Again, such a provision requiring reimbursement would be rendered meaningless if the Developer were not providing such services. *See Rosetta Res.*, 645 S.W.3d at 219.

We next examine whether the Original Contract contained the "essential terms" for the provision of services considered at the time of formation. *See San Jacinto River Auth.*, 688 S.W.3d at 136. Here, the evidence showed that the parties' Original Agreement contained: a description of the real property; an identification of the

26

parties that allowed for assignment by Shadow Creek, LLC and the documentation showing its interest to Roman Forest Sec III, LLC; a deadline for closing on the property that contemplated feasibility studies and various amendments for the extension of those periods; the price of the real property; and "Special Provisions" that required the District to use those sales proceeds to reimburse the Developer for eligible development costs and specified things like water, sewer, drainage, engineering, parks, and roads. We conclude the parties' Original Agreement contains essential terms contemplated by chapter 271 and as characterized by other courts. *See Hous. Cmty. Coll.*, 589 S.W.3d at 212 (noting that under chapter 271 essential terms include, among other things, the parties' names, the price to be paid, the service to be rendered, the property at issue, and the time of performance); *see also San Jacinto River Auth.*, 688 S.W.3d at 136; *Williams*, 353 S.W.3d at 138–39; *Kirby Lake*, 320 S.W.3d at 838. The Original Agreement outlined the parties' basic obligations—the District would sell the real property to the Developer, and the District would then use those proceeds to reimburse the Developer for eligible costs, specifying certain infrastructure improvements that would be eligible. *See Kirby Lake*, 320 S.W.3d at 838.

Although the Original Agreement did not contain exact specifications for the development and its construction, the evidence showed that the parties entered a later Preconstruction Agreement that addressed those details within the Original

27

Agreement's feasibility period, including the District's intention to sell bonds to assist with paying the Developer. The District's records also show that on November 28, 2020, it selected Kent as the Developer. Additionally, the District's records show that after the parties executed the Original Agreement but before they entered the Preconstruction Agreement, the Developer had begun addressing condemnation and engineering issues, and the Developer was attending board meetings discussing the status of the development, among other things. The records also show that the District consulted regularly with the Developer's representatives on the issues. The Original Agreement provided the essential terms of the parties' obligations, the parties rendered some performance or acted in reliance upon their expressions of the agreement, and they subsequently acted by executing the Preconstruction Agreement, which provided greater detail. *See Fischer*, 479 S.W.3d at 242; *Hous. Cmty. Coll.*, 589 S.W.3d at 213 (citations omitted). The parties' performance here supports an inference that they had a meeting of the minds regarding their respective obligations and at a minimum raises a fact issue about whether they intended to have a binding agreement. *See Hous. Cmty. Coll.*, 589 S.W.3d at 213.

Clearing a jurisdictional hurdle did not require the Developer to prove the "contract's ultimate enforceability." *See Campbellton Rd.*, 688 S.W.3d at 117; s*ee also San Jacinto River Auth.*, 688 S.W.3d at 136. We hold that the parties' Original Agreement was a written contract satisfying Texas Local Government Code section

28

271.151(2)(A) that contains the essential terms for the provision of services. *See* Tex. Local Gov't Code Ann. § 271.151(2)(A); *San Jacinto River Auth.*, 688 S.W.3d at 136; *Campbellton Rd.*, 688 S.W.3d at 118. The Developer pleaded facts with some evidentiary support and raised a fact issue on the written contract's formation. *See Campbellton Rd.*, 688 S.W.3d at 117. Thus, the trial court erred by granting the District's Second Plea to the Jurisdiction and dismissing the Developer's breach of contract claim. We sustain issue one.

We have already concluded that the Original Agreement meets the requirements of section 271.151(2)(A). In connection with its breach of contract claim, among other things, the Developer seeks specific performance, which the statute expressly allows. *See* Tex. Local Gov't Code Ann. § 271.153(c). Allowable damages against a governmental entity for breach of such a contract include "[a]ctual damages, specific performance, or injunctive relief[.]" *Id.*

The Developer frames its remaining issues in the alternative. Having sustained issue one as to the breach of contract claim, we do not reach the remaining issues. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having sustained issue one as to the Developer's breach of contract cause of action and request for specific performance, we reverse the trial court's Order Granting the District's Second Plea to the Jurisdiction and Motion to Dismiss as to

that claim, and remand it for further proceedings consistent with this opinion. We affirm the trial court's Order as to the Developer's other claims.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

W. SCOTT GOLEMON
Chief Justice

Submitted on February 10, 2026
Opinion Delivered June 25, 2026

Before Golemon, C.J., Johnson and Wright, JJ.